UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DHILLON, *et al.*, | No. C-10-0723 EMC |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| ALEJANDRO MAYORKAS, *Director, U.S. Citizenship & Immigration Services, et al.*, | |
| Defendants. | **(Docket Nos. 46, 47)** |

Plaintiffs Steven and Ruby Dhillon, husband and wife, have filed suit against the federal government. In their complaint, they assert that actions taken by the United States Citizenship and Immigration Services ("USCIS") were arbitrary and capricious and violated their right to due process. Currently pending before the Court are the parties' cross-motions for summary judgment. Having considered the parties' briefs and accompanying submissions, the oral argument of counsel, and all other evidence of record, the Court hereby **GRANTS** the government's motion for summary judgment and **DENIES** the Dhillons'.

## I. FACTUAL & PROCEDURAL BACKGROUND

In a previous order in which it denied Plaintiffs' motion for a temporary restraining order, the Court detailed the factual background underlying this case. *See* Docket No. 37 (order, filed on 4/5/2010). The Court need not repeat that factual background here and provides the following summary only.

In 1995, Ms. Dhillon entered the United States using a passport in a different name which she was provided for 150,000 pesos. In 1997, she filed an application (I-485) to adjust her status to

1    that of a lawful permanent resident based on her marriage to a U.S. citizen, Dionisio Sagrado. At
2    the same time, her then-husband Mr. Sagrado filed a visa petition (I-130) on her behalf.

3    In 1998, agents for the former Immigration and Naturalization Service ("INS") interviewed
4    Ms. Dhillon based on an anonymous tip that she was in the country illegally. In conjunction with
5    that investigation, the agents also spoke to Mr. Sagrado. The agent found Ms. Dhillon and Mr.
6    Sagrado gave conflicting information. According to a Form I-213 report filled out by one agent, Mr.
7    Sagrado eventually confessed that the marriage was fraudulent and asked to withdraw the I-130 visa
8    petition. Thereafter, the INS denied Ms. Dhillon's application for status as a permanent resident and
9    initiated removal proceedings against her.

10   In 1999, Mr. Sagrado and Ms. Dhillon divorced. In 2001, Ms. Dhillon married Mr. Dhillon,
11   and Mr. Dhillon filed a I-130 visa petition on her behalf. In July 2002, the INS issued a notice of
12   intent to deny ("NOID"), explaining that, under 8 U.S.C. § 1154(c), no petition shall be approved if
13   the alien has previously sought to be accorded a nonquota or preference status as the spouse of a
14   U.S. citizen by reason of a marriage determined by the Attorney General to have been entered into
15   for the purpose of evading the immigration laws. The INS gave Mr. Dhillon eighteen days to submit
16   evidence in support of the petition and in opposition to the NOID. In March 2003, the newly formed
17   USCIS formally denied Mr. Dhillon's petition, reaffirming that the basis of the denial was § 1154.
18   The agency noted that Mr. Dhillon had failed to offer any evidence.

19   In 2003, Mr. Dhillon appealed the denial of the petition to the Board of Immigration Appeals
20   ("BIA"). The BIA eventually rendered its decision in June 2008. It affirmed the decision of the
21   USCIS, noting that Mr. Dhillon had been given time to respond to the NOID but but that he failed to
22   offer any evidence in response.

23   While Mr. Dhillon's appeal was pending with the BIA, the removal proceedings against Ms.
24   Dhillon continued. In April 2003, as part of the removal proceedings, a hearing was held before an
25   immigration judge ("IJ"). The IJ considered as evidence the Form I-213 report discussed above that
26   had been prepared by the INS agent. Ms. Dhillon objected to the report as hearsay but the IJ
27   overruled the objection. The IJ stated that he "would give . . . an opportunity to cross-examine the
28   declarant, assuming that the declarant would be available to cross[,] if you had some sort of counter

theory to advance before this Court . . . [or] some basis on which to attack the reliability of the I-213," CAR at 105, but Ms. Dhillon offered neither a counter-theory nor a basis on which to attack the report's reliability. The IJ also offered Ms. Dhillon the opportunity to provide a rebuttal but she did not do so. Notably, she declined to provide any testimony herself. At the conclusion of the hearing, the IJ ordered Ms. Dhillon's removal.

Subsequently, Ms. Dhillon filed a motion to reopen her removal proceedings, which the BIA denied in 2004. Ms. Dhillon appealed the BIA's decision to the Ninth Circuit. In November 2009, the Ninth Circuit dismissed the petition for review.[1]

Thereafter, in February 2010, the Dhillons initiated this lawsuit. In the attempt to stay Ms. Dhillon's removal, the Dhillons filed a motion for a temporary restraining order which this Court denied in April 2010. In its order, the Court noted that, to the extent the Dhillons were challenging the removal proceedings, this Court lacked jurisdiction.

## II. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where the plaintiff has the ultimate burden of proof, it may prevail on a motion for summary judgment only if it affirmatively demonstrates that there is no genuine dispute as to every essential

---

[1] By this time, the BIA had affirmed the USCIS's denial of Mr. Dhillon's I-130 visa petition.

3

element of its claim. *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). In contrast, where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

B.     Removal Proceedings

There does not appear to be any dispute by the parties that, under the applicable statutes and regulations, an IJ is not able to review, as part of the removal proceedings, a USCIS finding – made in conjunction with an I-130 visa petition – that a marriage is fraudulent.[2]  The heart of the Dhillons' position, as reflected in their summary judgment papers, is that it is fundamentally unfair that a USCIS finding that a marriage is fraudulent is "insulated" from an IJ's review and that she had no opportunity to cross-examine Mr. Sagrado, whose statement provided a key basis for the petition denial.

The problem for the Dhillons is that, as discussed in the Court's order denying the motion for temporary injunctive relief, this Court lacks jurisdiction to review any challenge to the removal proceedings, whether based on the due process clause of the Constitution or 8 U.S.C. § 1229a(b)(4).[3] Under 8 U.S.C. § 1252(a)(5), "a petition for review filed with an appropriate *court of appeals* in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act." 8 U.S.C. § 1252(a)(5) (emphasis added). The Dhillons have failed to cite any authority to indicate that, in spite of § 1252(a)(5), this Court does have the authority to review their challenge to the removal proceedings. Regardless of the merits of their challenge to the removal proceedings, this Court does not have jurisdiction to adjudicate that challenge.

---

[2] Of course, that does not mean that a challenge to the USCIS finding cannot be made through other avenues – *e.g.*, through an appeal to the BIA or to a district court of the denial of the visa petition.

[3] Section 1229a(b)(4) provides that an alien in removal proceedings "shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4).

C. <u>Visa Proceedings</u>

Although the Dhillons' case is largely a challenge to the removal proceedings against Ms. Dhillon, the Dhillons are also contesting the visa proceedings as well.[4] In essence, the Dhillons argue that they were entitled to a full adjudicatory process at the visa petition stage – in particular, the opportunity to cross-examine either Mr. Sagrado and/or the agent who prepared the I-213 report. At the hearing, the Dhillons emphasized that it is especially important to have such a process at the visa petition stage precisely because a USCIS finding can have, in effect, a binding effect in the removal proceedings – *i.e.*, because the IJ does not have the authority to review a USCIS finding regarding a fraudulent marriage.

The Court begins its analysis by taking note that there is no statute or regulation requiring a full adjudicatory process at the visa petition stage. The Dhillons admitted such at the hearing. Clearly, the immigration regulations do not require a full adjudicatory process. Title 8 C.F.R. § 103.2(b)(16) simply provides that "[a]n applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision," and that,

> [i]f the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section.

*Id.* § 103.2(b)(16)(i). Nowhere in the regulation is there a provision stating that the applicant has the right to cross-examine. *Compare* 8 U.S.C. § 1229a(b)(4) (providing that an alien in removal proceedings "shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government"); *see also Garcia-Lopez v. Aytes*, No. C 09-02592 RS (Docket No. 41) (Order at 5) (noting that "[t]he statute governing I-130 visa petitions makes no reference to Section 1229a, which

---

[4] Mr. Dhillon has actually filed two I-130 visa petitions on behalf of Ms. Dhillon. The Dhillons have made clear in conjunction with their motion for a temporary restraining order that they are mounting a challenge with respect to the first I-130 visa petition only.

United States District Court
For the Northern District of California

suggests that aliens are not entitled to cross-examine government witnesses during the visa petition process").

As for the absence of a statutory basis, the Court notes that the APA does require a full adjudicatory hearing in certain circumstances, but this is not such a case. Title 5 U.S.C. § 554 provides that such a hearing is required "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing."[5] 5 U.S.C. § 554. The Dhillons have pointed to no statute (or regulation) containing language indicating that a visa petition is to be determined after a hearing on the record. *See Garcia-Lopez*, No. C 09-02592 RS (Docket No. 41) (Order at 5-6) (stating that "there is no indication that Section 1154 triggers the formal adjudication procedures set forth in the [APA]"; the section "does not require a 'hearing' or 'adjudication' at any stage of the application process"). Nor have the Dhillons cited the Court to any legislative history indicating that Congress intended a visa petition to be determined after a hearing on the record.[6] *See St. Louis Fuel*, 890 F.2d at 447-49 (asking whether "statute indicates that Congress intended to *require* full agency adherence to all section 554 procedural components") (emphasis in original); *see also Moore v. Madigan*, 789 F. Supp. 1479, 1485 (W.D. Mo. 1992) (stating that, "[g]enerally, in order to be entitled to a formal hearing under the Administrative Procedure Act, 5 U.S.C. § 554(a), the relevant statute or regulation must provide for a hearing 'on the record'").

---

[5] As noted by the D.C. Circuit:

> If an adjudication is governed by section 554, it must feature the following procedural components: an impartial and unbiased presiding officer, [5 U.S.C.] § 556(b); notice and an opportunity to participate in the hearing, *id.* § 554(c); the right of the parties to appear with counsel, *id.* § 553(b); the right to present oral and written evidence (including rebuttal evidence) and to conduct such cross-examination as is required for a full and true disclosure of the facts, *id.* § 556(d); the right to submit proposed findings, conclusions and exceptions, *id.* § 557(c); the compilation of an exclusive record upon which the agency must base its decision, *id.* § 556(e); and limitations on ex parte communications and on the combination of prosecutorial and adjudicative functions, *id.* § 554(d).

*St. Louis Fuel & Supply Co. v. FERC*, 890 F.2d 446, 448 (D.C. Cir. 1989).

[6] The Court notes that, under Supreme Court case law, deportation proceedings (as opposed to visa proceedings) – though required by statute to be determined on the record after a hearing – are not governed by the provisions of § 554 of the APA. *See Ardestani v. INS*, 502 U.S. 129, 133 (1991).

6

Therefore, absent a regulatory or statutory basis, the only question remaining is whether a full adjudicatory process is required for visa proceedings by the due process clause of the Constitution. The Dhillons' argument that such is required is not without some force. As noted above, there is no dispute that an IJ may not review, as part of the removal proceedings, a USCIS finding that a marriage is fraudulent. Arguably, therefore, this places a premium on there being full and complete procedures at the visa petition stage.

Nevertheless, the Court ultimately finds the Dhillons' due process argument in this case unpersuasive. First, it is not clear that the Dhillons have a protected interest in the first place. *Cf. Hanggi v. Holder*, 563 F.3d 378, 384 (8th Cir. 2009) (stating that alien "has no constitutionally-protected liberty interest in the discretionary relief of adjustment of status"); *Alvarez-Acosta v. United States AG*, 524 F.3d 1191, 1197 (11th Cir. 2008) (stating that both "a continuance of removal proceedings and an adjustment of status . . . are discretionary [and therefore alien] was deprived of no liberty interest"); *Singh v. Mukasey*, 263 Fed. Appx. 161, 163-64 (2d Cir. 2008) (concluding no constitutionally protected liberty or property interest when petitioner seeks discretionary relief such as adjustment of status); *Sarr v. Gonzales*, 485 F.3d 354, 362 (6th Cir. 2007) (stating that adjustment of status is "granted only in the discretion of the attorney general" and that "'[t]he failure to be granted discretionary relief does not amount to a deprivation of a liberty interest'"); *Naeem v. Gonzales*, 469 F.3d 33, 38-39 (1st Cir. 2007) (stating that adjustment of status is "discretionary in nature" and therefore "an alien has no protected property or liberty interest in . . . adjustment of status"); *cf. Rivera v. Mukasey*, 508 F.3d 1271, 1276 n.4 (9th Cir. 2007) (noting that "[v]oluntary departure is a form of discretionary relief for which there is no constitutionally protected liberty interest").

Second, even assuming that there is some liberty interest deserving of protection under the due process clause, the Dhillons' due process claim fails. The Dhillons are making an as-applied challenge in the instant case, not a facial one. *See Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796, 803 (1984) (distinguishing between a facial challenge and an as-applied challenge and concluding, after determining that the appellee could not establish that the law is "unconstitutional in every conceivable application, or . . . seeks to prohibit such a broad range of

7

protected conduct that it is unconstitutionally 'overbroad,'" that the challenge was "basically a challenge to the ordinance as applied to [the appellee's] activities," and therefore "limited [the Court's] analysis of the constitutionality of the ordinance to the concrete case before [it]"). Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court must consider the following factors in evaluating the Dhillons' as-applied challenge:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Martinez-De Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). As the Court noted in its order denying the Dhillons' request for temporary injunctive relief, there is nothing to suggest that the desired cross-examination – whether of Mr. Sagrado or the INS agent – would have had any probable value. "Since [the Dhillons] failed to present any counter-theory or basis for rebuttal [to the IJ during removal proceedings], there is nothing to suggest the reliability of the adjudication of their I-130 petition would have been materially enhanced by cross-examination." Docket No. 37 (Order at 16-17). Moreover, it should be noted that

> it should not have been difficult [for the Dhillons] to provide some rebuttal to the government's evidence because Ms. Dhillon should have had possession, custody, or control of evidence to support the claimed legitimacy of her marriage to Mr. Sagrado. Instead, the Dhillons offered no real evidence at all, other than a statement by their attorney – and only on the appeal [of the visa petition denial] to the BIA – that "the marriage ended in acrimonious fashion" and two letters signed by Mr. Sagrado and Ms. Dhillon which merely asked about the status of the I-130 visa petition.

Docket No. 37 (Order at 15-16). The Court finds the second *Mathews* factor weighs heavily against the Dhillons and is dispositive to their due process claim herein.

### III. CONCLUSION

For the foregoing reasons, the Court grants the government's motion for summary judgment and denies the Dhillons'. The Court lacks jurisdiction to review the Dhillons' challenge to the removal proceedings. The Dhillons' contention that they are entitled to a full adjudicatory process with respect to the visa petition is without merit.

The Clerk of the Court is instructed to enter judgment in accordance with this order and close the file in this case.

This order disposes of Docket Nos. 46 and 47.

IT IS SO ORDERED.

Dated: August 20, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge